IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARK MATTHEWS,

                              Plaintiff;

        v.                                              Civil Action No. 14-1455-RGA

E.I. DU PONT DE NEMOURS AND
COMPANY and HEWITT ASSOCIATES LLC,

                              Defendants.

## TRIAL OPINION

Martin D. Haverly, Esq., MARTIN D. HAVERLY, ATTORNEY AT LAW, Wilmington, DE.

Attorney for Plaintiff.

Kathleen Furey McDonough, Esq. and Stephanie E. O'Byrne, Esq., POTTER ANDERSON &
CORROON, LLP, Wilmington, DE.

Attorneys for Defendants.

June _28_ , 2016

*Anthard G. Andrews*

**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiff Mark Matthews instituted this suit under the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. § 1001, *et seq.* ("ERISA"), against Defendants E.I. du Pont de Nemours and Company ("DuPont") and Hewitt Associates, LLC ("Hewitt"). Plaintiff seeks relief based on alleged violations of ERISA arising from the calculation of his benefits under the DuPont Pension and Retirement Plan (the "Plan"). (D.I. 19). Plaintiff brought claims: (1) to recover Plan benefits (Count I); (2) to recover Plan benefits for a period prior to the time he submitted a request for benefits based on theories of breach of fiduciary duty (Count III) and equitable estoppel (Count IV); and (3) to compel Defendants to "gross-up" payments to account for additional tax liability he would incur if his breach of fiduciary duty and equitable estoppel claims were to succeed (Count II). (*Id.* at 12–15).

Plaintiff moved for summary judgment on Count I. (D.I. 36). Without objection, the Court treated Count I as being the subject of cross-motions for summary judgment. (D.I. 45, 46). The Court granted summary judgment in favor of Hewitt and against Plaintiff on Count I. (D.I. 48). The Court also granted partial summary judgment in favor of DuPont on three issues regarding Count I that were raised in the parties' briefs. (D.I. 47, 48). The Court requested that the parties meet and confer regarding one outstanding issue related to Count I. (D.I. 47 at 2). Thereafter, the parties agreed that there are no remaining triable issues with respect to Count I. (D.I. 51 at 1). Defendants are therefore entitled to judgment in their favor regarding the entirety of Count I.

The Court held a bench trial on Counts II through IV on January 11, 2016. (D.I. 58). The Court's findings of fact and conclusions of law follow.

## Count III—Breach of Fiduciary Duty

### *Findings of Fact*

DuPont retained Hewitt to assist with administering the Plan. (D.I. 50 at 5). Hewitt provides customer service to Plan participants. (*See, e.g.*, D.I. 26-1 at 35–36; D.I. 26-2 at 36– 39). On October 1, 2013, in anticipation of his retirement from DuPont at the end of the calendar year, Plaintiff contacted Hewitt to request a calculation of his pension benefits under the Plan. (D.I. 50 at 5). Plaintiff retired from DuPont effective December 31, 2013. (*Id.*). Although Plaintiff first received a pension election authorization form ("Authorization Form") in October 2013, Plaintiff did not sign and file an Authorization Form until November 2014. (*Id.* at 6). Plaintiff began receiving pension benefits effective January 1, 2015. (*Id.*). If Plaintiff had signed and filed an Authorization Form before his December 2013 retirement, he would have received $79,578.95 in pension payments between his retirement date and January 2015. (*Id.* at 22).

### *Additional Findings of Fact and Conclusions of Law*

An ERISA fiduciary can be liable for making affirmative misrepresentations on a theory of breach of fiduciary duty under ERISA. *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994). To prove a breach of fiduciary duty based on misrepresentations, a plaintiff must establish the following elements: "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001). "[U]nder ERISA, a person is a fiduciary with respect to a plan only to the extent that he has any discretionary authority or discretionary responsibility in the administration of such plan."

3

*Burstein v. Ret. Account Plan For Emps. of Allegheny Health Educ. & Research Found.*, 334

F.3d 365, 384 (3d Cir. 2003) (alteration in original) (internal quotation marks omitted); 29

U.S.C. § 1002(21)(A).

DuPont has designated an Administrative Committee as the "Plan Administrator and

named fiduciary for administration of the Plan." (D.I. 26-5 at 5). DuPont has also designated a

"Benefit Plan Appeals Committee [as] the named fiduciary for determining appeals under the

Plan." (*Id.*). Committee members "serve at the pleasure of [DuPont]" and DuPont has

"authority to control and manage the assets of the Pension Trust Fund." (*Id.* at 5, 6, 35–36).

DuPont was thus an ERISA fiduciary.

Defendants argue that Hewitt cannot be held liable as an ERISA fiduciary. (D.I. 50 at 7–

8; D.I. 61 at 2). DuPont instructs Hewitt on the resolution of benefits determinations that involve

discretionary decisionmaking. (*See* D.I. 26-3 at 59–71; D.I. 26-7 at 21). Hewitt's "Benefit

Determination Review Team (BDRT) is staffed by Aon Hewitt employees who receive direction

from the Plan's Administrator." (D.I. 26-7 at 21). Plaintiff argues that the "Benefit Review

Determination Team" is called the "Benefit Plan Appeals Committee" in the Plan. (*See* D.I. 62

at 2 (citing D.I. 41 at 12)). There is no evidence in the record equating the Benefit Review

Determination Team with the Benefit Plan Appeals Committee. Further, that the Benefit Review

Determination Team consists entirely of Hewitt employees, while the Benefit Plan Appeals

Committee "may, but need not, be Employees [of DuPont]" suggests that the terms do not refer

to the same body. (*See* D.I. 26-5 at 5; D.I. 26-7 at 21). Thus, Hewitt was not an ERISA

fiduciary. Because Hewitt is not an ERISA fiduciary, it is not liable to Plaintiff for breach of

fiduciary duty. *See* 29 C.F.R. § 2509.75-8(D-2). Nevertheless, because Hewitt is DuPont's

agent, its actions are attributable to DuPont. *See Geddes v. United Staffing All. Employee Med.*

*Plan*, 469 F.3d 919, 926 (10th Cir. 2006) ("[A] fiduciary is responsible for actions performed in his name. Restatement (Second) of Trusts § 225 (1959). The same is true in the ERISA context.").

Plaintiff claims that Defendants misrepresented: (1) that if Plaintiff signed an Authorization Form to begin to receive benefits, he could not later challenge the amount of those benefits (D.I. 59 at 1–2 (#1–4)); (2) that Plaintiff would not forfeit payments if he did not sign an Authorization Form to begin to receive benefits (*id.* at 2 (#5–6)); and (3) that Plaintiff had completed the entire retirement process on November 26, 2013 (*id.* at 2 (#7)). Defendants argue that they did not make the misrepresentations that Plaintiff claims they did.[1]  (D.I. 61 at 2–5).

Defendants did not represent that if Plaintiff signed an Authorization Form to begin to receive benefits, he could not later challenge the amount of those benefits. Plaintiff cites transcripts of phone conversations he had with representatives of Hewitt on October 1, 2013, October 31, 2013, November 25, 2013, and December 10, 2013 to show that Defendants represented that he would not be able to challenge the amount of his benefits after he signed an Authorization Form. (D.I. 59 at 1–2 (citing D.I. 26-12 at 17, 22, 51); D.I. 62 at 2 (citing D.I. 26-12 at 4, 22, 30)). Review of the cited conversations, however, demonstrates that Plaintiff was not told that he could not challenge his benefits calculation after signing an Authorization Form. For example, Plaintiff argues that he was told on October 31, 2013 that "[e]rrors need to be corrected before the payout begins." (D.I. 59 at 2). The cited transcript shows that, after Plaintiff raised several issues with the benefits calculation, the Hewitt representative merely reassured Plaintiff that Defendants would make any necessary corrections within the two months before the date he wanted to retire:

---

[1] "Defendants do not dispute that if a material misrepresentation was in fact made, Plaintiff detrimentally relied on it. But in this case, no material misrepresentation occurred." (D.I. 61 at 2 n.2).

| | |
|---|---|
| **Mark Matthews:** | All right.  Now if there's an error I want to be able to have that corrected after that fact if necessary, and you know be made whole. |
| **BC Representative:** | Well if there's an error in the calculations we'll get that corrected even before you get paid out. We want to make sure that we're using the correct numbers.  So all the—any corrections that need to be made will be done before your— before your retirement date. |
| **Mark Matthews:** | Well if I have a problem I'll give you a call right away. |
| **BC Representative:** | Oh please, absolutely, we want you to.  This way we can get everything corrected for you before you actually get your first payment. |

(D.I. 26-12 at 22).  The cited transcripts simply do not demonstrate any representation by Defendants that Plaintiff could not challenge the amount of his benefits after signing the Authorization Form and beginning to receive payments.  Further, Plaintiff was told that any errors in his calculated pension benefits would be corrected.  (D.I. 58 at 80–81, 113; *see also* D.I. 26-1 at 35, 36; D.I. 26-12 at 39, 48, 54–55).

Defendants did not represent that Plaintiff would not forfeit payments if he did not sign an Authorization Form to begin to receive benefits.  Plaintiff argues that, although Plaintiff was told there would be "delays" in his payments if he did not sign an Authorization Form, Defendants never told him that he would forfeit payments if he did not sign it.  (D.I. 59 at 2). The Summary Plan Description states:  "You must complete the entire retirement process before your retirement kit expires. . . . If you do not complete the process before your retirement kit expires, you must initiate your retirement request again using a future pension payment start date.  Missed payments will not be restored to you."  (D.I. 26-4 at 26).  In light of the Summary Plan Description, Defendants' omitting to tell Plaintiff during phone conversations that payments

6

he missed due to failing to sign the Authorization Form would not be restored to him did not

constitute a misrepresentation. *See Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1016 (3d Cir.

1997) ("[P]articipants have a duty to inform themselves of the details provided in their plans.");

*Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 577 (3d Cir. 2006) ("[The Summary Plan

Description is] the primary document on which plan participants must rely." (internal quotation

marks omitted)); *see also Bicknell v. Lockheed Martin Grp. Benefits Plan*, 410 F. App'x 570,

575 (3d Cir. 2011) ( "[I]t [would be] unreasonable for a plan participant to rely upon an

employer's representation as to the contents of the Plan where the participant is in possession of

a plan document containing express terms regarding the subject of the representation."").

Defendants thus did not represent to Plaintiff that he could recoup payments he missed between

the date he wanted to retire and the date he completed the retirement process by signing and

returning the Authorization Form.

   Further, Defendants did not represent to Plaintiff that he had completed the entire

retirement process on November 26, 2013. Plaintiff argues that, "[w]hile the 32 page long

Summary Plan Description ("SPD") states that one must 'complete' the 'entire retirement

process' or else 'missed payments will not be restored to you,' . . . Defendants' Representative

stated that Plaintiff had 'completed' the process." (D.I. 59 at 2 (citing D.I. 26-12 at 44; D.I. 58 at

29)). The transcript of the November 26, 2013 call on which Plaintiff relies states the following:

| | |
|---|---|
| **Mark Matthews:** | Okay. So I take it that with this phone call now I have officially started the retirement process, or— |
| **BC Representative:** | We actually already started it with you, but— |
| **Mark Matthews:** | Okay. |
| **BC Representative:** | We've done the things to complete it. |

7

| | |
|---|---|
| **Mark Matthews:** | I have—I have officially been considered to have filed for retirement? |
| **BC Representative:** | Correct, so at this point it's just the finalization, which is the authorization form. |
| **Mark Matthews:** | Okay, good, then I can start telling people around work that I'm retiring at the end of the year. |
| | . . . |
| **BC Representative:** | Yeah, as soon as we get that authorization form back we'll be able to get this completed for you. |

(D.I. 26-12 at 44).  Additionally, Plaintiff acknowledged that he understood that as of November 26, 2013, he had not done everything necessary to receive his pension.  (D.I. 58 at 82, 89, 92). Defendants did not represent to Plaintiff that he had completed the entire retirement process on November 26, 2013.

Because the evidence shows that Defendants did not make the misrepresentations that Plaintiff alleges, Plaintiff is not entitled to recover against DuPont under a theory of breach of fiduciary duty.  Further, Hewitt is not liable because it was not an ERISA fiduciary.  Defendants are entitled to judgment in their favor on Count III.

### Count IV—Equitable Estoppel

*Finding of Fact*

Defendants did not conceal from Plaintiff that he could appeal the amount of his benefits after he signed the Authorization Form.

*Additional Findings of Fact and Conclusions of Law*

An employer can also be liable for making affirmative misrepresentations on a theory of equitable estoppel under ERISA.  *Curcio*, 33 F.3d at 235.  To succeed on an equitable estoppel

8

theory, a plaintiff must establish: "(1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." *Id.*

Plaintiff is not entitled to judgment in his favor on Count IV because Plaintiff has not proven extraordinary circumstances. "Generally, extraordinary circumstances arise from conduct involving acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud. There also may be extraordinary circumstances attributable to a defendant's repeated misrepresentations or a plaintiff's particular vulnerability." *Araujo v. Kraft Foods Global, Inc.*, 387 Fed. App'x 212, 216 (3d Cir. 2010) (citations and internal quotation marks omitted). "[S]imple ERISA reporting errors or disclosure violations, such as variations between a plan summary and the plan itself" are not extraordinary circumstances. *Id.*

Plaintiff argues that the circumstances under consideration were extraordinary because Defendants made "repeated misrepresentations" and because Defendants "concealed the very words" that would have resulted in Plaintiff signing the Authorization Form at the appropriate time. (D.I. 59 at 3–4). Because I find that Defendants did not make misrepresentations to Plaintiff, the circumstances are not extraordinary on that basis. (*See supra* Count III—Breach of Fiduciary Duty). Further, Plaintiff has not proven that Defendants concealed that he needed to sign the Authorization Form to begin receiving benefits and that he could have "separately appeal[led] whatever he want[ed] and if successful, payments [would] be adjusted." (D.I. 26-7 at 46). There is no evidence suggesting that Defendants hid information from Plaintiff regarding whether he could appeal the amount of his benefits after he signed the Authorization Form. To the contrary, the very note that Plaintiff cites suggests that Defendants intended to give Plaintiffs full and accurate information. (*Id.* ("The [participant] should be advised (again) that he must

9

sign the [Authorization Form] on a timely basis in order to receive his pension.")).  Further, Plaintiff was told that his objections to the benefits calculations would not "slow this [retirement] up." (D.I. 26-12 at 48).

For the reasons stated above, Defendants are entitled to judgment on Count IV.

**Count II—Tax "Gross-Up"**

Because Plaintiff is not entitled to recover benefits under Counts III and IV, Plaintiff is not entitled to a tax "gross-up" to recoup any unfavorable tax consequences of such a recovery. Defendants are entitled to judgment on Count II.

**Conclusion**

For the reasons stated above, the Court finds in favor of the Defendants on all counts of the Complaint (D.I. 19).  A separate form of final judgment will be entered.