IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARK MATTHEWS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| E.I. du PONT de NEMOURS AND | ) | Civ. No. 14-1455-RGA |
| COMPANY, a Delaware Corporation; | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM

Currently pending before the court are cross-motions for attorneys' fees and costs filed by Plaintiff Mark Matthews and Defendant E.I. duPont de Nemours and Company ("DuPont"). (D.I. 84; D.I. 95). For the reasons set forth below, Plaintiff's motion is granted in part and denied in part, and DuPont's motion is denied.

## I.    BACKGROUND

### A.  Procedural History

Plaintiff filed his initial complaint in this action on December 2, 2014 and an amended complaint on April 21, 2015. (D.I. 1; D.I. 19). The amended complaint asserted four counts against Defendants DuPont and Hewitt Associates, LLC (collectively, "Defendants"). (D.I. 19 at ¶¶ 49-68). Count I sought a recovery of Plan benefits under ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B). (*Id.*). Count II sought a tax "gross-up" for any Plan benefits recovered. (*Id.*). Count III alleged that Defendants breached a fiduciary duty by making material misrepresentations. (*Id.*). And Count IV alleged that Defendants should be equitably estopped based on the same misrepresentations. (*Id.*).

1

On September 4, 2015, Plaintiff moved for summary judgment on Count I to recover Plan benefits.  (D.I. 36).  In support of his motion, Plaintiff argued that: (1) Defendants incorrectly calculated the offset from Plaintiff's Qualified Domestic Relations Order ("QDRO"); (2) Defendants incorrectly calculated Plaintiff's partial years of service by assuming there were 30 days in each calendar month and 360 days in a calendar year; and (3) Defendants incorrectly calculated Plaintiff's Primary Social Security Benefit ("PSSB") by excluding any social security earnings from 1966 to 1973, when Plaintiff did not work at DuPont.  (D.I. 37 at 12-20; D.I. 47 at 1-3).  In his reply brief, Plaintiff raised an additional argument regarding the PSSB calculation: that Dupont improperly excluded his social security earnings from 2013.  (D.I. 47 at 2).

The court treated Plaintiff's motion as a cross-motion for summary judgment and granted partial summary judgment in Defendants' favor on Count I.  Specifically, Hewitt won on all three arguments, because Plaintiff could not recover any benefits from Hewitt as a matter of law.  (D.I. 47 at 6; D.I. 48).  DuPont won on all three arguments under Count I, except the part of the PSSB argument related to Plaintiff's social security earnings from 2013.  (D.I. 47; D.I. 48).  For the argument related to the 2013 earnings, the court instead ordered that the parties provide further information.  (D.I. 48).  Plaintiff subsequently notified the court that he would not further pursue the dispute over the 2013 earnings, because it was "*de minimis.*"  (D.I. 51).  Thus, judgment for Defendants on Count I could be entered when the court issued its ruling on the remaining counts. (*Id.*).  After a bench trial, the court issued an opinion on June 28, 2016, finding in favor of Defendants on Counts II, III, and IV.  (D.I. 63).  Judgment was entered that same day.  (D.I. 64).

On July 26, 2016, Plaintiff filed a notice of appeal with the Third Circuit.  (D.I. 65). Plaintiff's appeal encompassed only one sub-issue of Count I: the court's summary judgment decision regarding the QDRO.  (*See* Appellant's Opening Brief Nov. 7, 2016 at p.2).  On March

16, 2017, the Third Circuit agreed with Plaintiff on the QDRO issue and reversed the judgment as to DuPont on Count I. *See Matthews v. E.I. DuPont De Nemours & Co.*, 682 F. App'x 148, 150 (3d Cir. 2017). The parties agree that, as a result, Plaintiff is entitled to past due benefits in the amount of $9,170.00. (D.I. 105). On March 30, 2017, Plaintiff filed a Motion and Application for an Award of Attorney's Fees with the Third Circuit. The Third Circuit referred Plaintiff's Motion for Attorney's Fees to this court. (D.I. 74). Thereafter, DuPont filed its cross-motion for attorneys' fees. (D.I. 95).

### B. Plaintiff's Fee Request

After applying a billing discretion reduction, Plaintiff requests a grand total of $166,261.66 in fees and costs for 579.01 hours of work. (D.I. 92 at 2; D.I. 85 at 10-11; D.I. 96 at 13). According to Plaintiff, these hours do not include time spent on Counts II-IV. (D.I. 85 at 3 n. 4). Plaintiff's fee request reflects an hourly rate of $350 for lead counsel and $200 for law clerks. (*Id.* 85 at 5). Finally, Plaintiff requests pre- and post-judgment interest at 8.25% per annum, and asks that the interest be applied to his past due benefits as well as his attorneys' fees and costs. (*Id.* at 11, 20).

DuPont does not contest that Plaintiff is entitled to reasonable attorney's fees and costs, nor does it contest the amount of fees requested (other than the request for 8.25% interest). (D.I. 96 at 3). Nevertheless, two adjustments, due to typos, must be made to Plaintiff's numbers. First, in his opening brief, Plaintiff requested $133,388.00 in fees and $4,112.16 in costs. (D.I. 85 at 20). The $133,388.00 in fees is composed of two amounts: $74,213.00 from certain activities in the District Court and $59,175.00 from certain activities in the Third Circuit. (*Id.* at 6-7). Adding up the underlying numbers shows that $74,21**3.00** should actually be $74,21**0.30**. (*See id.* at 8-10). Thus, Plaintiff should have initially requested $133,385.30 in fees (not $133,388.00) and $4,112.16 in costs.

Second, the amounts requested in Plaintiff's opening brief represent activity only until August 31, 2017. (D.I. 85 at 17, 20). Plaintiff later requested, via letter, an additional $27,465.00 in attorneys' fees and $1,306.00 in costs to cover activity between September 1, 2017 and January 31, 2018. (D.I. 92). The February 2, 2018 letter contains another typo. According to the letter, the grand total request in fees and costs (reached by adding together the totals provided in the opening brief and the letter) is $166,261.66. (*Id.*). But adding up the underlying numbers shows that $166,2**6**1.66 (without correcting the earlier typo) should be $166,2**7**1.66. (*Id.* at 2). After correcting for both typos, Plaintiff actually seeks a grand total of $166,268.96.

### C. DuPont's Fee Request

DuPont requests $123,048.25 in attorneys' fees and costs for succeeding on all but one issue. (D.I. 96 at 1 & 3). DuPont's request is comprised of two numbers: $92,906.25 for trial work and $30,142.00 for work related to the fee applications. (*Id.* at 12). DuPont's fee request reflects 269 hours of trial work. (*Id.* at 12). In its fee request, DuPont applies the same blended rate of $350.00 per hour used by Plaintiff (which resulted in a further reduction of its trial counsels' fees). (*Id.* at 13-14). Finally, DuPont argues that its request for attorneys' fees should be offset against Plaintiff's request for attorneys' fees. (*Id.* at 20).

## II.   DISCUSSION

ERISA provides that a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Where a motion for attorneys' fees is contested, the court's exercise of discretion is guided by a two-step inquiry. First, the court must find that the party achieved "some degree of success on the merits." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 103 (3d Cir. 2012) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242,

255 (2010)). Second, the court must consider five factors, referred to as the "*Ursic* factors." *Iola*, 700 F.3d at 103–04; *Perelman v. Perelman*, 793 F.3d 368, 377 (3d Cir. 2015).

Here, Plaintiff does not dispute that DuPont achieved some degree of success on merits. (D.I. 100). Plaintiff only disputes whether the *Ursic* factors weigh in favor of granting DuPont's fee request. (*Id.*). DuPont, for its part, does not dispute that Plaintiff is entitled to reasonable attorneys' fees and costs, nor does it dispute the amount of fees requested. (D.I. 96 at 3). DuPont only disputes Plaintiff's request for 8.25% in interest and the application of that interest to both past due benefits as well as attorneys' fees and costs. (*Id.*). Accordingly, the court will first discuss the *Ursic* factors, as applied to DuPont, and then discuss Plaintiff's request for interest.

### A.   DuPont's Fee Request

The five *Ursic* factors are: "(1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983). For the reasons explained below, I find that all but one factor— the third—are neutral, and the remaining factor weighs against granting DuPont's fee request.

### 1.   Bad Faith or Culpable Conduct

As previously stated, the first *Ursic* factor considers whether the non-moving party's conduct involved bad faith or culpability. *Ursic*, 719 F.2d at 673. "[B]ad faith normally connotes an ulterior motive or sinister purpose." *McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 256 (3d. Cir. 1994). Culpable conduct "is commonly understood to mean conduct that is 'blameable; censurable; [or] at fault.'" *Id.* at 256-57 (quoting Black's Law Dictionary (6th ed. 1990). "Such conduct normally involves something more than simple

negligence." *Id.* at 257.  A plaintiff is generally found to have acted with culpable conduct when a claim is "clearly frivolous on the merits." *Monkelis v. Mobay Chem.*, 827 F.2d 935, 937 (3d Cir. 1987); *see also Feinstein v. Saint Luke's Hosp.*, 2012 WL 4364641, at *4 (E.D. Pa. Sept. 25, 2012) (finding plaintiff's conduct culpable where the complaint was "rife with misleading and unsupported allegations").  Here, the parties focused most of their energies on the equitable estoppel claim, which was not clearly frivolous.  Plaintiff may have lost on this issue, but a party "is not culpable merely because it has taken a position that did not prevail in litigation." *McPherson*, 33 F.3d at 257.  And, of course, on the issue that motivated Plaintiff—the QDRO issue—Plaintiff won.  For these reasons, I do not find that Plaintiff acted with culpable conduct. Thus, the first factor does not weigh in favor of DuPont's fee request.

### 2.    Ability to Satisfy an Award of Attorneys' Fees

The second *Ursic* factor considers whether Plaintiff can satisfy a fee award.  *Ursic*, 719 F.2d at 673.  The evidence here is undeveloped.  DuPont did not present any evidence that Plaintiff is capable of satisfying an award of attorneys' fees.  Instead, DuPont requested fees only "to the extent Plaintiff is entitled to fees," and the amount of DuPont's fees request is less than the amount of Plaintiff's fee request. (D.I. 96 at 1).  Thus, anything Plaintiff has to pay can be satisfied out of the amount Plaintiff is due to get from DuPont.  Plaintiff, for his part, asserts—somewhat sarcastically—that he "does not have billions of dollars." (D.I. 100 at 14).  Considering the foregoing, the second factor neither weighs in favor nor against granting DuPont's fee request. The second factor is neutral.

### 3.    Deterrent Effect from Awarding Fees

DuPont argues that an award of fees in its favor would deter future meritless litigation. (D.I. 96 at 17).  Some of Plaintiff's arguments appeared frivolous, but those issues were only a

minor part of the case. The issue to which the parties gave the greatest attention and time—equitable estoppel—was not beyond dispute. Resolving the merits of the equitable estoppel claim warranted a trial. In addition, Plaintiff makes a reasonable policy argument that granting DuPont's fee request will create a chilling effect on ERISA plaintiffs seeking to vindicate their rights, as low and middle-income ERISA plaintiffs will be reluctant to risk the additional litigation costs. (D.I. 100 at 14). Given the foregoing, the third factor weighs against granting DuPont's fee request.

### 4.      Benefit Conferred on the Plan as a Whole

DuPont argues that the lawsuit conferred a benefit on the Plan by resolving whether or not it correctly calculated Plan benefits. (D.I. 96 at 18). Specifically, Plan members now know that Plan benefits are correctly calculated when Defendants use a 360-day-calendar year and exclude from the calculation of the PSSB any social security earnings in years the Plan member did not work at DuPont. (*Id.*). It is difficult to conclude that these rulings conferred much of a benefit on the plan as a whole when the court found that the impact of the 360-day calculation on Plan participants was "*de minimis*," Plaintiff concluded that his PSSB claim was also "*de minimis*," and Defendants themselves repeatedly referred to Plaintiff's claims as "groundless and meritless." (D.I. 47 at 1; D.I. 51; D.I. 96 at 15-18). In addition, I doubt that other Plan members were concerned about these issues. Accordingly, the fourth factor does not weigh in favor of granting DuPont's fee request.

### 5.      Relative Merits of the Parties' Positions

The final *Ursic* factor considers the relative merits of the parties' positions. *Ursic*, 719 F.2d at 673. DuPont never addressed the fifth factor in its briefs. (*See* D.I. 96; D.I. 103). Accordingly, DuPont has not shown that the fifth factor weighs in favor of granting its fee request.

Because none of the factors weigh in favor of granting DuPont's motion for attorneys' fees and costs, the motion is denied.

### B.  Pre- and Post- Judgment Interest

Plaintiff requests pre- and post- judgment interest of 8.25% per annum on the judgment obtained under Count 1 as well as the attorneys' fees and costs. (D.I. 85 at 20).  For the judgment under Count 1, Plaintiff will receive $9,170.00 in past-due Plan benefits.  For attorneys' fees and costs, Plaintiff will be awarded $166,268.96.  The court will first address interest on the judgment and then address interest on the attorneys' fees and costs.

### 1.  Interest on Past-Due Benefits

"[I]n the absence of an explicit statutory command otherwise, district courts have broad discretion to award prejudgment interest on a judgment obtained pursuant to a federal statute." *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 205–06 (3d Cir. 2004).  Thus, "an ERISA plaintiff who prevails under § 502(a)(1)(B) in seeking an award of benefits may request prejudgment interest … as part of his or her benefits award."  *Id*. at 208.  The Third Circuit has "not offered extensive guidance for deciding what rate of interest is appropriate in a given case," leaving the decision instead to the district court's broad discretion.  *Id*. (internal punctuation omitted).  Nevertheless, it is well understood that "prejudgment interest typically is granted to make a plaintiff whole."  *Anthuis v. Colt Indus. Operating Corp*., 971 F.2d 999, 1009 (3d Cir. 1992) (quoting *Schake v. Colt Indus*., 960 F.2d 1187, 1192 n. 4 (3d Cir. 1992)); *see also Iola*, 700 F.3d at 102 ("Prejudgment interest exists to make plaintiffs whole and to preclude defendants from garnering unjust enrichment.").

Plaintiff's request for 8.25% in pre-judgment interest is based on DuPont' actual Return on Plan Assets for the years 2014-2016, as reported in DuPont's 2016 10-K (filed on February 2,

2017).  (D.I. 85 at 11 n. 14).  As Plaintiff reads the 10-K, for 2014, 2015, and 2016, DuPont achieved an actual Return on Plan Assets of 8.35%, 8.10%, and 7.74%, respectively.  (D.I. 85 at 11 n. 14).  If Plaintiff's reading of the 10-K is correct, then a rate of 8.25% seems a bit high compared to the rates of return the Plan actually achieved.  Blending the three actual rates of return from 2014, 2015, and 2016 results in 8.06%.[1]  "[A]warding interest at a rate that would overcompensate the plaintiff would be punitive and would contravene 'ERISA's remedial goal of simply placing the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing.'"  *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 133 (3d Cir. 2000) (quoting *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir. 1998)).  With this principle in mind, awarding prejudgment interest at 8.06% on the past-due benefits amount of $9,170.00 seems appropriate.

Post-judgment interest on a money judgment is awarded pursuant to 28 U.S.C. § 1961.[2] *Skretvedt*, 372 F.3d at 208.  Under that statute, post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  Therefore, the court awards post-judgment interest as set by statute on the past-due benefits and the pre-judgment interest award.  The only source of authority Plaintiff cites for awarding post-judgment interest is 28 U.S.C. § 1961.  (D.I. 85 at 17-20).  Accordingly, the court sees no reason to apply any interest

---

[1]      (8.35% + 8.10% + 7.74%)/3 = 8.06%

[2]      Section 1961 states, "Interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961.

rate other than the one required by that statute. The court will not grant post-judgment interest at

the rate of 8.25% as requested by Plaintiff.

## 2.    Interest on Attorneys' Fees

Plaintiff requests 8.25% in pre- and post-judgment interest on the award of attorneys' fees

and costs. (*See* D.I. 85 at 17-20). But none of the cases Plaintiff cites in support of his request

address whether a party is entitled to any interest at all on attorneys' fees. *See, e.g. Schumacher*

*v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 679 (6th Cir. 2013) (addressing

an award of pre-judgment interest on an award of benefits with no mention of attorneys' fees);

*Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 624 & 627 (9th Cir. 2007)

(addressing an issue related to prejudgment interest awarded on ERISA benefits only)[3]; *Skretvedt*,

372 F.3d at 195 & 205-08 (3d Cir. 2004) (addressing an award of prejudgment interest on ERISA

benefits only); *Fotta v. Trs. of the UMW Health & Ret. Fund of 1974*, 165 F.3d 209, 214 (3d Cir.

1998) (deciding whether "a beneficiary of an ERISA plan may bring an action for interest on

delayed benefit payments"); *Quesinberry v. Life Ins. Co.*, 987 F.2d 1017, 1028-32 (4th Cir. 1993)

(addressing an award of postjudgment interest on the benefits only as evidenced by the fact that

the trial court denied plaintiff's motion for attorneys' fees); *Anthuis*, 971 F.2d at 1001 & 1009-10

(addressing an award of prejudgment interest on the benefits only as evidenced by the fact that the

trial court denied plaintiff's motion for attorneys' fees); *Brown v. Cont'l Cas. Co.*, 2005 WL

1949610, at *5 (E.D. Pa. Aug. 11, 2005) (deciding whether plaintiff had a right to "pre-judgment

interest on her benefits award"). Given the lack of authority on point, Plaintiff has not shown that

he is entitled to interest on his attorneys' fees and costs at the non-statutory rate of 8.25%.

---

[3]      *See also Blankenship v. Liberty Life Assur. Co. of Boston*, 2004 WL 1878211, at *16 (N.D. Cal. Aug. 20, 2004) (ordering "interest on each unpaid installment" of plan benefits but not ordering interest on award of attorneys' fees).

Nevertheless, 28 U.S.C. § 1961 allows for post-judgment interest "on any money judgment in a civil case" at the rate of the "1-year constant maturity Treasury yield." Plaintiff cites no authority for the proposition that, under 28 U.S.C. § 1961, an award of attorneys' fees is considered part of the "judgment." (D.I. 85 at 17-20). But the court notes that the analysis of at least two Third Circuit decisions proceed on the assumption that post-judgment interest on attorneys' fees is available under 28 U.S.C. § 1961. *See Eaves v. Cty. of Cape May*, 239 F.3d 527, 527-28 & 530 (3d Cir. 2001) (deciding when post-judgment interest under 28 U.S.C. § 1961 begins to accrue on an award of attorneys' fees); *Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 927 (3d Cir. 1985) (providing guidance on remand as to when post-judgment interest under 28 U.S.C. § 1961 should begin to accrue on a recalculated attorneys' fee award). Accordingly, the court will award post-judgment interest at the statutory rate on the $166,268.96 award of attorneys' fees and costs.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorneys' fees and costs (D.I. 84) is GRANTED IN PART AND DENIED IN PART. DuPont's cross-motion for attorneys' fees (D.I. 95) is DENIED.

A final judgment will be entered accordingly.

Dated: September __13__, 2018

UNITED STATES DISTRICT JUDGE